UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL ACTION H-18-198 |
| | § § § | |
| CHRISTOPHER ALAN BLYSHAK *on bond* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to suppress filed by defendant Christopher Alan Blyshak.[1] Dkt. 15. The government responded. Dkt. 19. Having considered the motion, response, and applicable law, the court is of the opinion that the motion to suppress should be DENIED.

**I. BACKGROUND**

This is a child pornography case in which Blyshak is charged with receipt and possession of child pornography. Dkt. 1 at 2–3. On June 23, 2017, Laura Gill, a Special Agent with Homeland Security Investigations ("HSI"), applied for a search warrant for Blyshak's residence. Dkt. 17 at 7. She attached an affidavit in support of the application. *Id.* at 8. Magistrate Judge Nancy Johnson signed the search warrant authorizing the search of Blyshak's residence for evidence of child pornography offenses, specifically possession of child pornography and access with intent to view child pornography. Dkt. 17 at 7.

---

[1] Blyshak also requests a hearing "[i]f the Court determines that factual questions are unresolved." Dkt. 15 at 7. Because the material facts are undisputed, Blyshak's request for a hearing is DENIED.

In the probable cause section of Gill's affidavit, she describes an undercover investigation into an Internet-based video conferencing application known as Zoom.com.[2] *Id.* at 20. Gill describes that a user must download the application to a computer, mobile phone, or other electronic device. *Id.* Once downloaded and installed, the user is prompted to create an account. *Id.* A user can invite other users to an online meeting room, which requires a specific ten digit number to access. *Id.* Within the meeting room, users can see and interact with other users via their devices' webcam feature and the application's chat feature. *Id.* at 20–21. Zoom.com maintains Internet Protocol ("IP") address logs for each meeting room, which includes all of the IP addresses and related usernames for each user in a particular room on a given day. *Id.* at 21.

On January 27, 2016, an HSI agent singed into a Zoom.com account and entered a meeting room. *Id.* at 22. The agent observed: (1) a user displaying images and/or videos depicting child pornography; (2) that another user with the display name "Cuntbreeder" became a member of the meeting room; (3) "Cuntbreeder's" webcam captures video of him that suggests he was intending to view the child pornography; and (4) "Cuntbreeder" made a public comment inside the room referencing the streamed child pornography.[3] *Id.* at 22–23.

On February 10, 2016, an HSI agent entered a Zoom.com meeting room. *Id.* at 23. The agent observed: (1) a user displaying images and/or videos depicting child pornography; (2) that another user with the display name "Deviant" became a member of the meeting room; and (3) "Deviant's"

---

[2]The affidavit refers to "Application A." Dkt. 17 at 20. In its response, the government revealed that "Application A" refers to Zoom.com. Dkt. 19 at 2.

[3]Regarding (3) and (4), the court is specifically referring to the activities described in paragraph 17 of Gill's affidavit.

webcam captures video of him that suggests he was intending to view the child pornography.[4] *Id.* at 23–24.

In March 2016, a U.S. Department of Justice Administrative Subpoena was served on Zoom.com, which revealed "Cuntbreeder's" IP address. *Id.* at 24. In June 2016, another subpoena was served on Zoom.com, revealing that "Deviant" shared the same IP address as "Cuntbreeder."[5] *Id.* at 25. In February and June 2017, the government was able to track the IP address to Blyshak's address, a single family residence. *Id.* at 25–26. In her affidavit, Gill states that in her experience, individuals that view child pornography almost always possess and maintain their hard copies of child pornographic material in the privacy and security of their home or some other secure location. *Id.* at 26–27. She also states that such individuals often maintain their child pornography images in a digital or electronic format in safe, secure, and private environments, such as on their computers. *Id.* at 27. She states that child pornography images are often maintained for several years. *Id.*

Relying on Gill's affidavit, Judge Johnson signed the search warrant authorizing the search of Blyshak's residence for evidence of child pornography offenses. Dkt. 17 at 1. The search warrant was executed on June 29, 2017. Dkt. 19 at 7. According to the government, agents seized seven laptops, one tablet, one iPad, two computer towers, two external hard drives, six SD cards, two memory sticks, and thirty thumb drives. *Id.* at 8. A forensic examination revealed 1,884 videos and 3,733 images of young children engaged in sexually explicit conduct. *Id.* Blyshak now moves to suppress the evidence seized during the search. Dkt. 15.

---

[4]The court is specifically referring to the activities described in paragraph 19 of Gill's affidavit.

[5]Another display name, "college perv," also shared the same IP address. Dkt. 17 at 25.

## II. LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend IV.

A motion to suppress is analyzed through a two-part analysis. First, the court determines whether the evidence at issue was obtained by law enforcement officials acting in "objectively reasonable good-faith reliance upon a search warrant." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997). The good-faith exception provides that "[i]f an officer's 'reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable,' a court need not suppress the fruits." *United States v. Flanders*, 468 F.3d 269, 271 n.2 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405 (1984)). Generally, it is presumed that it was objectively reasonable for an officer to execute a warrant. *See United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (endorsing a district court's statement that only in "exceptional circumstances" does the good-faith exception not apply to the execution of a warrant). There are, however, four exceptions when this presumption is overcome: (1) when the warrant is issued in reliance upon a deliberately false affidavit; (2) when the magistrate abandons his neutral, detached judicial role; (3) when the warrant is based on an affidavit so lacking in indicia of probable cause as to render an officer's belief in it unreasonable; and (4) when the warrant fails to identify a particular place to be searched or items to be seized. *Id.* at 916–17 (citing *Leon*, 468 U.S. at 914).

If the good-faith exception does not apply, then the second step is to determine if there was a substantial basis for finding probable cause. *Id.* Probable cause exists where there are "reasonably

trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S. Ct. 2317 (1983)). The supporting affidavit must show some nexus between the items to be seized and the criminal activity being investigated. *Id.* (citing *Warden v. Hayden*, 387 U.S. 294, 302, 307, 87 S. Ct. 1642 (1967)). Although a magistrate's determination of probable cause is afforded great deference, a warrant is deficient if it is based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." *Leon*, 468 U.S. at 914–15 (citation omitted).

### III. ANALYSIS

The court must first determine whether the good-faith exception to the exclusionary rule applies. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). If it applies, the court need not decide whether probable cause supported the warrant. *Id.* Blyshak argues that the good-faith exception does not apply "because the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Dkt. 15 at 4. Blyshak reasons that: (1) Gill had no evidence that Blyshak possessed child pornography; and (2) Gill's evidence was stale because Blyshak's alleged activity on Zoom.com took place sixteen months before Judge Johnson issued the warrant. *Id.* at 4–5. The court disagrees.

"When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Satterwhite*, 980 F.2d at 321 (citations omitted). "'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* "Generally, examples of 'bare bones'

5

affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." *Pope*, 467 F.3d at 920 (footnote omitted). A magistrate must be allowed to "draw reasonable inferences from the material he receives, and his ultimate probable cause decision should be paid great deference by reviewing courts." *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987) (footnote omitted).

"Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (citation omitted). Here, the search warrant authorized the search for evidence of violations of 18 U.S.C. § 2252A. Dkt. 17 at 3. Section 2252A criminalizes accessing with intent to view child pornography. 18 U.S.C. § 2252A(a)(5). Thus, to the extent that Blyshak argues that the warrant lacked probable cause because Gill did not have any evidence that he possessed child pornography, that argument is without merit. Given that Gill's affidavit provided evidence that Blyshak accessed child pornography with the intent to view it, the affidavit provided probable cause that a search would uncover evidence of a wrongdoing—accessing with intent to view child pornography. *See Perez*, 484 F.3d at 740.

Moreover, an affidavit supporting a warrant to search for child pornography does not need to contain "specific, individualized information that a defendant possesses child pornography." *Flanders*, 468 F.3d at 271 n.3. The Fifth Circuit has held that "it is common sense that a person who voluntarily joins a group such as Candyman, remains a member of the group for approximately a month without cancelling his subscription, and uses screen names that reflect his interest in child pornography, would download such pornography from the website and have it in his possession."

6

*United States v. Froman*, 355 F.3d 882, 890–91 (5th Cir. 2004). In *Froman*, "[t]he magistrate was entitled to infer from the affidavit that the singular purpose of Candyman was to trade pornography among its members. As such the magistrate was entitled to conclude that the overriding reason someone would join this group was to permit him to receive and trade child pornography." *Id.* at 890.

It is not clear from Gill's affidavit that the singular purpose of Zoom.com was to trade pornography. But the magistrate could infer that the singular purpose of the meeting rooms in question was to display child pornography. Blyshak's IP address was found on the website five times in a two week period. Dkt. 17 at 24–25. His display names reflected an interest in pornography, and his activity while the child pornography was displayed certainly demonstrated an interest in the child pornography. *See* Dkt. 17 at 22–24; *see also supra* notes 3–4. Thus, perhaps to an even greater extent than in *Froman*, it is common sense that a person who behaves like Blyshak did while on Zoom.com "would download such pornography from the website and have it in his possession."[6] *Compare Froman*, 355 F.3d at 890–91, *with* Dkt. 17 at 22–24. The warrant was not based on a bare bones affidavit, and thus Blyshak's first argument fails.

Regarding the staleness issue, the evidence in the affidavit was not so stale to render official belief in the existence of probable cause unreasonable. "The amount of delay which will make information stale depends upon the particular facts of the case, including the nature of the criminal

---

[6]Other circuits have ruled similarly. *See United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018) ("[The Sixth Circuit has] repeatedly held that visiting or subscribing to a website containing child pornography creates a reasonable inference that the user has stored child pornography on their computer."); *see also United States v. Martin*, 426 F.3d 68, 75 (2d Cir. 2005) ("It is common sense that an individual who joins" a website whose primary reasons for existence was the trading and collection of child pornography "would more than likely download and possess such material.").

7

activity and the type of evidence sought." *United States v. Allen*, 625 F.3d 830, 842 (5th Cir. 2010). "Given the complex nature of child pornography investigations, the evidence may take several months or years to accrue, and that evidence may consist of bits and pieces from camouflaged sources." *United States v. Silva*, No. SA–09–CR–203–XR, 2009 WL 1606453, at *6 (W.D. Tex. June 8, 2009).

Sixteen months passed from when Blyshak was seen accessing the child pornography and when the warrant was executed. Dkt. 17 at 1, 23. The Fifth Circuit has held that eighteen-month old evidence was not stale in a previous child pornography case. *Allen*, 625 F.3d at 842. In *Allen*, the affidavit provided evidence that the defendant possessed and distributed child pornography. *Id.* at 841. Blyshak argues that the instant case is distinguishable because Gill's affidavit does not provide any evidence that he was a collector of child pornography. Dkt. 15 at 5. The court disagrees. As set forth above, applying common sense, as the court must, Gill's affidavit provided evidence that Blyshak possessed child pornography. Further, Gill stated that individuals possessing child pornography usually maintain the pornography for years and that evidence is often still discoverable after long periods of time.[7] Dkt. 17 at 27. Thus, the evidence in the affidavit was not stale.

Because the warrant was not based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence unreasonable, Blyshak's argument fails. Thus, the good-faith

---

[7]The Fifth Circuit has previously relied on a similar statement in determining that child pornography evidence was not stale. *United States v. Streetman*, 207 F. App'x 414, 2006 WL 3419717, at *2 (5th Cir. 2006) ("The affidavit submitted in support of the warrant stated that electronic files on computers can be stored for years and are retrievable months or years later even if the user has 'deleted' them. At least one circuit has found that computer files are a type that could be expected to be kept for long periods of time in the place to be searched.").

exception to the exclusionary rule applies, and the court need not consider whether Judge Johnson had a substantial basis for finding probable cause.[8]  *Satterwhite*, 980 F.2d at 320.

### IV.  CONCLUSION

Blyshak's motion to suppress (Dkt. 15) is DENIED.  Because this order precludes the need for a hearing, Blyshak's request for a hearing is DENIED as moot.

Signed at Houston, Texas on August 6, 2018.

_____
Gray H. Miller
United States District Judge

---

[8] Even though the issue is unnecessary to consider, the court's analysis demonstrates that Judge Johnson had a substantial basis for finding probable cause.